[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 07-14796, 07-14797
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 29, 2008
THOMAS K. KAHN
CLERK

Bankruptcy Court Docket No. 07-30424-BK-DHW

In Re:     ROLLIFEE FRANKLIN BARRETT, JR.,
            MARY ANN BARRETT,

                                                  Debtors.
_____

DAIMLERCHRYSLER FINANCIAL
SERVICES AMERICAS LLC,

                                                  Plaintiff-Appellant,

versus

ROLLIFEE FRANKLIN BARRETT, JR.,
MARY ANN BARRETT,

                                                  Defendants-Appellees,

RICHARD JOHNSON,
CHERYLL JOHNSON,

                                                  Amicus Curiae.

---

Appeals from the United States Bankruptcy Court
for the Middle District of Alabama

---

**(September 29, 2008)**

Before TJOFLAT and MARCUS, Circuit Judges, and VINSON,[*] District Judge.

VINSON, District Judge:

In this consolidated appeal, DaimlerChrysler Financial Services Americas LLC ("Daimler") directly appeals two bankruptcy court orders in the Chapter 13 case of Rollifee Franklin Barrett and Mary Ann Barrett ("Debtors"). The issue raised on appeal concerns a pure question of law: whether a Chapter 13 debtor's surrender of a "910 vehicle" (*i.e.*, a vehicle purchased for personal use within 910 days before filing for bankruptcy) fully satisfies a creditor's claim secured by the vehicle and prevents the creditor from filing an unsecured claim for any remaining deficiency. To date, this question has been considered by five of our sister circuits (with each answering in the negative), but it is a matter of first impression in this Court.

I. BACKGROUND

---

[*]Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

The facts of this case are simple and undisputed. On August 15, 2006, the Debtors purchased a 2006 Jeep Liberty for their personal use, utilizing a retail installment contract. Daimler is the secured creditor under that contract. On March 22, 2007, the Debtors filed a petition for bankruptcy relief under Chapter 13 of the Bankruptcy Code, thus rendering the Jeep Liberty a 910 vehicle. Daimler filed a proof of claim providing for its secured claim of $25,661.27, which represented the outstanding payoff balance on the vehicle due at the time of the petition. The Debtors filed their Chapter 13 bankruptcy plan, proposing to surrender the vehicle in full satisfaction of the debt owed to Daimler and to pay 100% on allowed unsecured claims. Daimler objected to confirmation because the plan did not provide for the payment of any deficiency balance after disposition of the vehicle, but the bankruptcy court overruled the objection and later confirmed the plan. This direct appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have direct appellate jurisdiction in a bankruptcy case if the bankruptcy court (or the district court on review) certifies that: (1) an order entered in the case involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court, or if it involves a matter of public importance; (2) the order involves a question of law that requires resolution

of conflicting decisions; or (3) an immediate appeal from the order may materially advance the progress of the case or proceeding. *See* 28 U.S.C. § 158(d)(2)(A). The bankruptcy court certified that (1) and (2) are present, and we accepted the appeal. In considering this appeal, because the facts are undisputed, we will review the bankruptcy court's conclusions of law *de novo*. *See, e.g., In re Calvert,* 907 F.2d 1069, 1071 (11th Cir. 1990).

## III. ANALYSIS

To answer the question presented in this case, we must interpret and apply two provisions of the Bankruptcy Code --- Title 11, United States Code, Sections 1325(a)(5) and 506(a) --- in light of the "hanging paragraph," which was added at the end of Section 1325(a)(9) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[1]

Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumers and business proprietors with small debts. *See Johnson v. Home State Bank,* 501 U.S. 78, 82, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66 (1991). A debtor who is eligible for such relief may submit a plan that modifies the rights of his or

---

[1] The section in question has been called the hanging paragraph because, although it is set forth as a subparagraph following 11 U.S.C. § 1325(a)(9), it is not separately designated by letter or number. Rather, it just "hangs" without ordered designation and without surrounding context. It has been variously referred to by courts as Section 1325(a)(9), Section 1325(a)(*), and as the "hanging paragraph." For purposes of this opinion, we will use "hanging paragraph" in text and § 1325(a)(*) for citations.

4

her secured and unsecured creditors. *Id.* The bankruptcy court will confirm the plan if it satisfies the requirements of Title 11, United States Code, Section 1325(a). Under that statute, the plan's treatment of an "allowed secured claim" will be confirmed if (1) the creditor accepts the plan [11 U.S.C. § 1325(a)(5)(A)]; (2) the debtor retains the property and makes payments on the claim [11 U.S.C. § 1325(a)(5)(B)]; or (3) the debtor surrenders the property to the creditor [11 U.S.C. § 1325(a)(5)(C)].

Pre-BAPCPA, if a Chapter 13 debtor *surrendered* the property, the creditor could pursue an unsecured deficiency claim if it had a right to collect a deficiency under applicable nonbankruptcy law. If a debtor *retained* the property, the debtor would be allowed to keep the collateral over objection of the creditor and satisfy the debt by making monthly payments equal to its present market value instead of the remaining balance on the loan. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 957, 117 S. Ct. 1879, 1882-83, 138 L. Ed. 2d 148 (1997). This is commonly known as "cramdown."[2] The treatment and valuation of the claim secured by the collateral was governed by Section 506 of the Code, which

---

[2] It is called "cramdown" because, as the Seventh Circuit has explained, the bankruptcy court in effect "crams down the creditor's throat the substitution of money for the collateral, a situation that creditors usually oppose because the court may underestimate the collateral's market value and the appropriate interest rate, and the debtor may fail to make all promised payments, so that the payment stream falls short of the collateral's full value." *In re Wright,* 492 F.3d 829, 830 (7th Cir. 2007) (Easterbrook, J.).

5

provides:

> (a)(1) An allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property[.]

11 U.S.C. § 506(a)(1). If a debtor exercised the retention option, the secured claim could thus be separated, or bifurcated, into a secured portion (reflecting the actual present value of the collateral) and an unsecured portion (reflecting the remaining deficiency). Regardless of whether the debtor retained or surrendered the vehicle, the creditor was permitted to seek payment of any deficiency as an unsecured creditor. *Cf. Rash, supra,* 520 U.S. at 962-63 (recognizing that Section 506(a) applied to both retention and surrender of collateral pre-BAPCPA).

BAPCPA changed the foregoing with respect to certain claims. Specifically, it added the hanging paragraph, which provides:

> For purposes of [Section 1325(a)(5)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor

6

> [*i.e.*, a 910 vehicle], or if collateral for that debt consists
> of any other thing of value, if the debt was incurred
> during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(*). As courts have widely recognized, the hanging paragraph prevents a bankruptcy court from approving a plan incorporating a "cramdown" when the debtor elects to retain the 910 vehicle. *See In re Rodriguez,* 375 B.R. 535, 548 (9th Cir. BAP 2007) ("It is apparent that [with the hanging paragraph] Congress intended to take away the right of debtors to reduce their secured obligations on retained 910 vehicles to the value of the vehicles."). In other words, because the valuation provision of Section 506(a) no longer applies to bifurcate a 910 vehicle claim, a debtor retaining the vehicle must now pay the entire claim and it is to be treated as fully secured. The question in this case, however, is: what happens when the debtor surrenders a 910 vehicle post-BAPCPA?

Early on, this issue was confronted by a number of bankruptcy courts, with the clear majority holding that the surrender of the 910 vehicle fully satisfies the claim. *See, e.g., Rodriguez, supra,* 375 B.R. at 542, n.6 (collecting multiple cases adopting this view). The rationale of these cases can be generally summed up as follows: Because a 910 vehicle claim is no longer subject to bifurcation and must be treated as fully secured when the debtor retains the vehicle, it must also be treated as fully secured when the debtor surrenders the vehicle, and, logically,

surrender satisfies the claim and precludes an unsecured claim for deficiency. However, a small minority of bankruptcy courts held that surrender did not fully satisfy the claim if the security agreement provided for recourse. *See, e.g., In re Particka,* 355 B.R. 616, 625-26 (Bankr. E.D. Mich. 2006) (citing with approval the "only two published cases" rejecting the majority view). These few courts held that "the right to pursue a deficiency claim derives from the recourse nature of an obligation under non-bankruptcy law after disposition of collateral." *Id.* at 626.

The Seventh Circuit was the first court of appeals to address this issue. The debtors in *In re Wright,* 492 F.3d 829 (7th Cir. 2007) owed more on a 910 vehicle than it was worth, and they proposed in their Chapter 13 plan to surrender the vehicle in full satisfaction of the debt. However, the security agreement between the parties provided for recourse, that is, if the debt was not paid in full after the vehicle was taken and sold, then the debtors would be liable for any deficiency under the contract and relevant provisions of the state's version of the Uniform Commercial Code. The Wright's creditors objected to confirmation of the Chapter 13 plan. The bankruptcy court adopted the then-minority position and declined to approve the plan because the debtors did not propose to pay any portion of the deficiency.

On direct appeal to the Seventh Circuit, the Court (per Judge Easterbrook)

8

presented the issue as "what happens when, as a result of the hanging paragraph, § 506 vanishes from the picture." 492 F.3d at 830. The court held that "by knocking out § 506, the hanging paragraph leaves the parties to their contractual entitlements." *Id.* at 832. In reaching this result, the Seventh Circuit reasoned that "it is a mistake to assume, as the majority of bankruptcy courts have done, that § 506 is the *only* source of authority for a deficiency judgment when the collateral is insufficient." *Id.* (emphasis in original). Rather, Supreme Court precedent provides that "state law determines rights and obligations when the Code does not supply a federal rule." *Id.* (*citing Butner v. United States,* 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979); and *Travelers Cas. & Surety Co. v. Pacific Gas & Electric Co.,* --- U.S. ---, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007); *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000)). Put differently, the Court believed that the majority view made the mistake of assuming that the sales contracts and state law are irrelevant unless implemented by the Bankruptcy Code, when, in fact, "*Butner* holds that the presumption runs the other way: rights under state law count in bankruptcy unless the Code says otherwise." *Id.* at 832-33.

The *Wright* court also observed that, under the majority view, if the debtors had surrendered their 910 vehicle the day *before* filing for Chapter 13 bankruptcy,

Case 07-30424    Doc 86    Filed 09/30/08    Entered 09/30/08 13:46:40    Desc Main
Document      Page 9 of 17

then the creditor would be able to treat any shortfall in the collateral's value as an unsecured debt, yet if the debtors surrendered the vehicle the day *after* filing for bankruptcy, then the creditor would not be entitled to such relief. *See id.* at 832. The Seventh Circuit noted that this anomalous result (the compulsory conversion of full recourse purchase money secured loans into non-recourse loans) was inconsistent with "Restoring the Foundation for Secured Credit," which is the name and stated purpose of the BAPCPA section that enacted the hanging paragraph. *Id.* To the contrary, if the majority view was to be followed, "then many secured loans have been rendered non-recourse, no matter what the contract provides." *Id.* at 830. The court explained that nothing in the Bankruptcy Code prohibits an unsecured deficiency claim under state law following surrender of the collateral, and that "[c]reditors don't need § 506 to create, allow, or recognize security interests, which rest on contracts (and the UCC) rather than federal law." *Id.* at 832-33. The Seventh Circuit concluded that the "fallback" under Supreme Court precedent was the parties' contract, and that:

> [b]y surrendering the car, debtors gave their creditor the full market value of the collateral. Any shortfall must be treated as an unsecured debt. It need not be paid in full, any more than the Wrights' other unsecured debts, but it can't be written off *in toto* while other unsecured creditors are paid some fraction of their entitlements.

Case 07-30424    Doc 86    Filed 09/30/08    Entered 09/30/08 13:46:40    Desc Main
Document      Page 10 of 17

*Id.* at 833.

The Eighth Circuit was the next court of appeals to consider this issue, in *Capital One Auto Finance v. Osborn,* 515 F.3d 817 (8th Cir. 2008). The court recognized that the majority of bankruptcy courts had held that "since § 506(a) does not apply, the entire claim is secured, and therefore, under § 1325(a)(5)(C), the surrender of the vehicle fully satisfies the claim." *Id.* at 821. But, this view, according to *Osborn* (and as noted in *Wright, supra*), "essentially turns a recourse loan into a non-recourse loan, to the benefit of unsecured creditors." *Id.* at 821. The court went on to explain that the majority position was based on the erroneous belief that the Bankruptcy Code prohibits bifurcation when, in fact, "the hanging paragraph simply removes the bankruptcy code's *method* of bifurcation. The hanging paragraph has no effect on state-law rights." *Id.* at 822 (emphasis added). Citing *Wright* and other cases, *Osborn* noted that there was a "trend . . . toward allowing a deficiency claim." *Id.* at 819. Because the underlying sales contract gave the creditor the right to repossess the vehicle, sell it, and apply the proceeds to the debt owed, and also sue the debtors for any "additional amounts if the proceeds of the sale do not pay all of the amounts [owed]," the Eighth Circuit adopted the Seventh Circuit's interpretation and held that the creditor was entitled

11

to an unsecured deficiency under state law. *Id.* at 822-23.[3]

Soon thereafter, the Sixth Circuit, in a very divided opinion, reached the same result in *In re Long,* 519 F.3d 288 (6th Cir. 2008). The lead opinion agreed with *Wright, supra,* insofar as the case held that "courts should not simply allow the debtor to surrender the car and then wipe out the deficiency" because doing so "undermines reasonable obligations created by the contract between the parties." *Id.* at 291; *see also id.* at 295 ("the complete elimination of a deficiency judgment in Chapter 13 cases" would be a "nonsensical" and "[ir]rational result" because, *inter alia*, it "dispenses with a major obligation created by the contract"). Although the lead opinion agreed with *Wright* with respect to the foregoing, it "question[ed] the wisdom" of the Seventh Circuit's holding that the deficiency judgment "should depend entirely on the vagaries of state laws as to foreclosure, repossession, sale and judicial remedy." *Id.* at 291. Relying on the common law principle of interpretation known as "the equity of the statute," the lead opinion believed there should be a uniform national rule. *Id.* at 297-98. The concurring judge agreed that surrender of the vehicle should not wipe out the deficiency, but

---

[3] On the same date that *Osborn* was decided, the Eighth Circuit decided *AmeriCredit Financial Servs., Inc. v. Moore,* 517 F.3d 987 (8th Cir. 2008). *Moore* reemphasized that under *Osborn,* the deficiency claim is an unsecured claim under state law and not --- as the creditor in that case argued --- a fully secured claim entitling the creditor to "full payment." *See id.* at 989. In this case, Daimler advances the same argument that was rejected in *Moore*. *See* Appellant's Brief at 20-24. We reject it for the same reasons.

12

he disagreed with substituting a national rule in place of state law, as proposed by the lead opinion:

> A uniform national rule as urged by the lead opinion would allow a creditor to seek a deficiency following foreclosure without regard to whether the contract at issue was non-recourse under state law. There is no indication that this was the intent of Congress when it enacted the BAPCPA.

*Id.* at 300 (Cox, J., concurring).[4]

In *In re Ballard,* 526 F.3d 634 (10th Cir. 2008), the Tenth Circuit concurred with *Wright, Osborn,* and *Long, supra,* in that the surrender of a 910 vehicle will not be in full satisfaction of the debt. In so doing, it "join[ed] the growing number of courts [to hold] that, by making § 506 inapplicable to 910 car claims, the hanging paragraph does not abrogate a creditor's right to assert a deficiency claim authorized by state law." *Id.* at 638. This conclusion was based on the plain language of the statute and Supreme Court precedent, as recognized by the Seventh and Eighth Circuits in *Wright* and *Osborn,* respectively. *See id.* at 638-41. Therefore, in the case of surrender of a 910 vehicle under Section 1325(a)(5)(C), a debtor satisfies the requirements for plan confirmation with respect to that allowed

---

[4] The third judge on the *Long* panel filed a dissenting opinion in which he stated that he would "affirm based upon the well-reasoned opinion of the bankruptcy court." *Id.* at 301 (Clay, J., dissenting).

13

secured claim, and "[w]hether the creditor may bring an unsecured claim to recover a deficiency after sale of the vehicle depends on the underlying contract and state law." *Id.* at 641.[5]

Most recently, the Fourth Circuit, in *Tidewater Finance Co. v. Kenney,* 531 F.3d 312 (4th Cir. 2008), expressly joined the Seventh, Eighth, and Tenth Circuits "in holding that, after a debtor satisfies the requirements for plan confirmation under § 1325(a)(5)(C) by surrendering his 910 vehicle, the parties are left to their contractual rights and obligations, and the creditor may pursue an unsecured deficiency claim under state law." *Id.* at 318. The *Kenney* court began its analysis by stating that "[t]he principle that state law determines the rights and obligations of debtors and creditors when the Bankruptcy Code fails to supply a federal rule is well recognized." *Id.* The Fourth Circuit then quoted from *Butner, supra,* wherein the Supreme Court explained the logic behind this principle as follows:

> *Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.* Uniform treatment of property interests by both state and federal courts within

---

[5] The *Ballard* court agreed with the result, but by necessary implication did not adopt the reasoning, of the Sixth Circuit's lead opinion in *Long, supra,* which, as noted, used "the equity of the statute" to fill a perceived statutory gap rather than resort to non-bankruptcy law to preserve the deficiency claims.

> a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S. Ct. 347, 350, 5 L. Ed. 2d 323. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

*Id.* at 319 (*quoting Butner,* 440 U.S. at 55) (emphasis added). The *Kenney* court thus concluded that a deficiency claim may be pursued by the creditor of a 910 vehicle as an unsecured claim so long as the underlying state law, in conjunction with the parties' contract, allows for such a claim.[6]

In light of the foregoing, it seems safe to say that the previous minority view is now the majority view. Given the comprehensive analysis by our sister circuits, we have little to add. A plain reading of the hanging paragraph makes clear that Congress intended to (and did) make Section 506(a) inapplicable to a 910 vehicle. In such a situation, we agree with the Seventh Circuit that "by knocking out § 506, the hanging paragraph leaves the parties to their contractual entitlements." *See Wright, supra,* 492 F.3d at 832. Leaving the parties to their contract, and looking to applicable state law, is required by well-established Supreme Court precedent.

---

[6] Like the Tenth Circuit, the *Kenney* court agreed with the overall result, but did not adopt the reasoning, of the Sixth Circuit's *Long* decision.

15

*See, e.g., Butner, supra,* 440 U.S. at 48 (explaining that state law determines rights and obligations when the Bankruptcy Code does not provide a federal rule).

We further note that a contrary result would be inconsistent with legislative intent. As we have recently stated, the legislative history of the hanging paragraph "leaves little doubt that its 'architects intended only good things for car lenders and other lienholders.'" *Graupner v. Nuvell Credit Corp.,* --- F.3d ---, 2008 WL 2993570, at *2 (11th Cir. Aug. 6, 2008) (*quoting Long, supra,* 519 F.3d at 294). Thus, car lenders and lienholders should clearly not be *negatively impacted* by the hanging paragraph in situations where the debtor surrenders a 910 vehicle, yet that is exactly the effect if surrendering the vehicle is deemed to fully satisfy the debt when the contract provides for recourse. Congress obviously did not intend such a result in legislation purporting to "Restor[e] the Foundation for Secured Credit."[7]

We thus join the Seventh, Eighth, Tenth, and Fourth Circuits[8] and hold that a creditor may pursue an unsecured deficiency claim when the debtor surrenders a

---

[7] The Debtors and the parties appearing *amicus curiae* suggest that we should not look to legislative intent because the language of the hanging paragraph is plain and unambiguous. While it is true that the statute is plain and unambiguous, as the Debtors and *amici* themselves also note, we may look to legislative intent to avoid an absurd result at odds with the meaning of the drafters. As noted above, we believe it would be an absurd result to hold that Congress intended to indirectly render secured loans into non-recourse loans --- no matter what the contract provides --- in legislation that expressly sought to restore the foundation of secured credit.

[8] And the Sixth Circuit, to the extent that it reaches the same result.

Case 07-30424    Doc 86    Filed 09/30/08    Entered 09/30/08 13:46:40    Desc Main
Document      Page 16 of 17

910 vehicle. The deficiency claim is to be governed by the parties' contract and applicable state law, and will depend on whether the contract and state law provide for recourse. Nothing in the Bankruptcy Code says otherwise, and we see no persuasive reason to conclude otherwise.

## IV. CONCLUSION

For the reasons stated above, we **VACATE** the bankruptcy court's orders overruling Daimler's objection and confirming the plan and **REMAND** to the bankruptcy court for further proceedings consistent with this opinion.